## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **D.N. and S.N., minors by and through** | : | **CIVIL ACTION NO. 1:08-CV-0526** |
| **their Guardians Ad Litem Arthur** | : | |
| **Nelson IV and Marie Nelson, ARTHUR** | : | **(Judge Conner)** |
| **NELSON IV, and MARIE NELSON,** | : | |
| | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KEVIN SNYDER, GORDON WATTS,** | : | |
| **and NORTH LONDONDERRY** | : | |
| **TOWNSHIP,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Arthur Nelson IV and Marie Nelson bring this civil rights action pursuant to 42 U.S.C. § 1983 on behalf of minors D.N. and S.N.[1] The complaint raises claims under three doctrines of due process liability: the special relationship theory, the state-created danger theory, and the Monell theory of municipal liability. Defendants have filed a motion to dismiss, arguing that the complaint fails to state a claim upon which relief may be granted. (Doc. 13.) For the reasons that follow, the motion will be granted in part and denied in part.

---

[1] Pursuant to Local Rule 5.2(d)(2), the court will use initials in place of the names of minor children involved in this matter. By a separate order of court, all previously docketed items containing the full names of minors D.N. and S.N. will be sealed.

I.    **Statement of Facts**[2]

Plaintiffs Arthur Nelson IV ("Arthur") and Marie Nelson ("Marie") are the

adoptive parents of plaintiffs D.N. and S.N., both of whom are currently seven years

old. (Doc. 1 ¶¶ 1-2, 4-5.)  Defendant Kevin Snyder ("Snyder") is the chief of police

for North Londonderry Township (the "Township"), and Gordon Watts ("Watts") is

the Township Manager.  (Id. ¶¶ 7-8.)  The Township is also named as municipal

defendant.  (Id. ¶ 9.)  Michael Fernsler ("Fernsler") is not a defendant in this action,

but his alleged criminal misconduct lies at the heart of the injuries plaintiffs claim

to have suffered.

In March 2005, Fernsler was employed as a police officer by the North

Londonderry police department.  (Id. ¶ 14.)  When Fernsler entered the office on

March 3, he learned that his computer had been removed by police personnel for

examination.  (Id. ¶ 15.)  Fernsler apparently began to panic and he immediately

sought the counsel of Jerry Cassel ("Cassel"), a fellow police officer who also served

as president of the North Londonderry Township Police Officer's Association.  (Id.

¶ 16.)  Fernsler explained that he was using the computer to view child

pornography.  (Id. ¶ 28.)  Cassel was understandably concerned by this disclosure,

and on March 7, he approached Snyder and relayed Fernsler's revelation.  (See id.

¶¶ 29-30.)  Snyder allegedly replied that "if Fernsler had confessed to viewing child

pornography, the Township would have to act."  (Id. ¶ 31.)  After his meeting with

---

[2] In accordance with the standard of review for a motion to dismiss, the court
will present the facts as alleged in the complaint.  See infra Part II.

2

Cassel, Snyder contacted Watts to debrief him on the situation.  (See id. ¶¶ 34-35.)

Later that evening, Snyder contacted Cassel and stated that Fernsler's termination

"was a done deal."  (Id. ¶ 34.)

Fernsler and Cassel met with Snyder and Watts on March 8, 2005.  (Id. ¶ 36.)

Watts allegedly presented Fernsler with a termination agreement, under which

Fernsler assented to resign from the department and the Township agreed to

provide Fernsler's prospective employers with neutral employment references.  (Id.

¶ 36.)  Furthermore, the department agreed to take no action with respect to the

pornographic images purportedly contained within the seized computer's hard

drive; the department would not investigate the matter, and the contents of the

computer would remain unexamined.  (See id. ¶¶ 36-37.)  Fernsler accepted these

terms, signed the agreement, and thereafter resigned from his position with the

department.  (Id. ¶ 36.)  Plaintiffs claim that defendants later destroyed the hard

drive of Fernsler's computer.  (Id. ¶ 37.)

Aside from Fernsler's admission regarding the child pornography, the

complaint contains two critical allegations regarding Snyder and Watts' knowledge

at the time that the agreement was executed.  First, both defendants allegedly knew

that Fernsler recently applied to become a foster parent with the Pennsylvania

Department of Welfare.  (See id. ¶¶ 41, 52.)  Second, Snyder and Watts purportedly

were aware that Fernsler possessed a history of domestic violence.  (Id. ¶¶ 23, 42.)

According to the complaint, defendants nonetheless agreed to cover up Fernsler's

misconduct.  (Id. ¶ 82.)  When the chief of the Annville Township police department

3

contacted Cassel requesting information regarding Fernsler's employment, Snyder purportedly instructed Cassel "not to release any information about Fernsler." (Id. ¶¶ 43, 46.) Shippensburg University contacted Snyder at some point prior to March 2006 and, true to the termination agreement, Snyder allegedly provided nothing more than the duration of Fernsler's employment. (Id. ¶ 63.)

On March 23, 2006—one year after Fernsler admitted to defendants that he was viewing child pornography on a department computer—Fernsler sexually assaulted D.N. and S.N. (Id. ¶ 1.) At the time, D.N. and S.N. were four years old and dependents of the Pennsylvania Department of Welfare. (Id. ¶¶ 1-2; 52.) Both minors were under the immediate care of Arthur and Marie, who were their foster parents at the time. (Id. ¶¶ 54-55.) Fernsler was the acting foster parent to D.N. and S.N.'s biological brothers. (Id. ¶ 53.) On the day of the assault, Fernsler brought his two boys to Arthur and Marie's home, ostensibly to visit their sisters. (See id.) Shortly after the assault, Fernsler was arrested and, on August 10, 2007, he pled guilty to involuntary deviate sexual intercourse, indecent assault, corrupting the morals of a minor, and unlawful contact with a minor. (Id. ¶ 71.)

On March 21, 2008, plaintiffs commenced the instant action by filing a complaint with this court. (Doc. 1.) Plaintiffs allege that defendants are responsible for the violation of D.N. and S.N.'s rights to substantive due process. The complaint advances three potential theories of civil rights liability: (1) the special relationship theory, (2) the state-created danger theory, and (3) the Monell theory of municipal liability. On May 21, 2008, defendants filed a motion to dismiss the complaint for

4

failure to state a cognizable cause of action.  (Doc. 13.)  The motion has been fully briefed and is ripe for disposition.

## II.   **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege

5

facts sufficient to "raise a right to relief above the speculative level"); <u>Victaulic Co.</u>

<u>v. Tieman</u>, 499 F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a

complaint for failure to state a claim if it contains "enough factual matter (taken as

true) to suggest the required element.  This does not impose a probability

requirement at the pleading stage, but instead simply calls for enough facts to raise

a reasonable expectation that discovery will reveal evidence of the necessary

element."  <u>Phillips</u>, 515 F.3d at 234 (quoting <u>Twombly</u>, 550 U.S. at 556).  Under this

liberal pleading standard, courts should generally grant plaintiffs leave to amend

their claims before dismissing a complaint that is merely deficient.  <u>See</u> <u>Grayson v.</u>

<u>Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d

113, 116-17 (3d Cir. 2000).

## III.   <u>Discussion</u>

Section 1983 affords a right to relief where official action causes a

"deprivation of rights protected by the Constitution."  <u>Monell v. Dep't of Soc. Servs.</u>,

436 U.S. 658, 690 (1978).  The statute is not an independent source of substantive

rights, but merely "provides a remedy for deprivations of rights established

elsewhere in the Constitution or federal laws."  <u>Kopec v. Tate</u>, 361 F.3d 772, 775-76

(3d Cir. 2004); <u>see also</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002).  To

establish a claim under § 1983, the plaintiff must demonstrate (1) the deprivation of

a constitutional right, and (2) that a "person acting under the color of state law" is

responsible for the alleged deprivation.  <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d

Cir. 1996); <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 120 (1992).

6

Plaintiffs base their § 1983 claim on alleged violations of the substantive due process protections of the Fourteenth Amendment.  The "substantive component of due process . . . protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (internal citation and quotation marks omitted).  Although the Due Process Clause limits the state's power to act, it does not place an affirmative obligation upon it to do so.  Deshaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989) (holding that the Due Process Clause "confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual").  However, the Third Circuit recognizes two exceptions to this general rule:  the "special relationship" and the "state-created danger" exceptions.  See Ye v. United States, 484 F.3d 634, 637 (3d Cir. 2007); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 907 (3d Cir. 1997).  Plaintiffs raise claims against Snyder and Watts under each of these due process exceptions.  Plaintiffs also assert violations for which the Township is potentially responsible pursuant to the Monell theory of municipal liability.  The court will address these claims and the asserted defenses seriatim.

## A.    The "Special Relationship" Theory

The "special relationship" theory recognizes that in circumstances where the state imposes limits upon an individual's "freedom to act on his own behalf," that deprivation of liberty triggers a corresponding duty under the Due Process Clause.

7

See DeShaney, 489 U.S. at 200.  Institutionalizing a minor in foster care is one such

circumstance in which this special relationship may arise.  According to the Third

Circuit, "foster children have a substantive due process right to be free from harm

at the hands of state-regulated foster parents."  Nicini, 212 F.3d at 807.  Therefore,

the state's placement of a child into state-regulated foster care establishes a special

relationship with that child, which imposes certain affirmative duties of care and

protection upon the state.  See id. at 807-08.

Defendants argue that they "possessed no control and there was no custodial

relationship between the Defendants and the Plaintiffs sufficient to create a 'special

relationship.'" (Doc. 14 at 13.)  In other words, defendants claim that any duty

incumbent upon the state by virtue of its special relationship with D.N. and S.N.

was not one reasonably bourne by Snyder, Watts, or the Township.  Plaintiffs

contend that because the state entered a special relationship with D.N. and S.N., all

government actors bore a duty to protect them from harm.  (See Doc. 16 at 13-14.)

The instant plaintiffs do not allege, however, that Snyder, Watts, or the Township

were responsible for the institutionalization of D.N. and S.N., or for the selection of

their foster parents.  The special relationship theory places a burden upon state

actors who maintain physical custody over a plaintiff.  See Ye, 484 F.3d at 637 n.1

(citing D.R. by L.R. v. Middlebucks Area Vocational Tech. Sch., 972 F.2d 1364, 1370

(3d Cir. 1992); Hayes v. Erie County Office of Children & Youth, 497 F. Supp. 2d 684,

691-92 (W.D. Pa. 2007); see also DeShaney, 489 U.S. at 199-200.  Assuming *arguendo*

that a special relationship duty arose in this case, that duty logically fell to the

8

Pennsylvania Department of Welfare or some similar agency tasked with institutionalizing and providing protection for D.N. and S.N.[3]  Plaintiffs' claims arising under the special relationship theory must consequently be dismissed. Leave to amend will be denied as futile.  See Grayson, 293 F.3d at 108 (observing that the district court may exercise its discretion to dismiss a claim with prejudice when leave to amend would be futile).

### B.    The "State-Created Danger" Theory

When the affirmative exercise of state authority either results in a citizen's injury or leaves a citizen more vulnerable to injury at the hands of a third party, the government contravenes the substantive due process protections of the Fourteenth Amendment.  See Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (quoting Schieber v. City of Phila., 320 F.3d 409, 416 (3d Cir. 2003)).  This is commonly referred to as "stated-created danger" liability.  See id.; see also Ye, 484 F.3d at 637-38.  In order to establish a state-created danger claim, plaintiffs must allege four elements:

---

[3] Plaintiffs assert that for special relationship liability to arise, "[i]t is only necessary that the plaintiff be in the custody of the state."  (Doc. 16 at 13.)  Although custody is certainly a prerequisite for the existence of a special relationship under this theory, custody cannot reasonably impose a duty of care upon government officials with no responsibility for overseeing a foster child's care.  To accept this argument would stretch the perimeters of special relationship liability beyond the boundaries authorized by the Third Circuit, and plaintiffs provide no legal authority to support such a doctrinal expansion.

(1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed.

Phillips, 515 F.3d at 235; see also Sanford v. Stiles, 456 F.3d 298, 304-05 (3d Cir. 2006).

Plaintiffs allege that the following acts by Snyder and Watts created a reasonably foreseeable danger to D.N. and S.N. as minors within the state foster care system: (1) actively concealing Fernsler's admission that he viewed pornographic images of children on a North Londonderry police department computer, and ultimately destroying the computer's hard drive; (2) executing a termination agreement with Fernsler, pursuant to which Snyder and Watts abjured investigating the misconduct in spite of their knowledge that Fernsler was (a) applying to become a foster parent with the Pennsylvania Department of Welfare, and (b) that he possessed a history of domestic violence; (3) allowing Fernsler to resign from the department and providing neutral employment references to inquiring prospective employers; and (4) attempting to prevent other department employees, such as Cassel, from revealing Fernsler's misconduct to non-department personnel.  The facts pled in the complaint, as well as the reasonable inferences drawn therefrom, are sufficient to overcome defendants' Rule 12(b)(6) motion to dismiss.  Plaintiffs may therefore pursue liability under § 1983.  See Kneipp, 95 F.3d at 1201 (adopting the state-created danger theory "as a viable

mechanism for establishing a constitutional violation under 42 U.S.C. § 1983"). The court will address each element of the doctrine in more detail below.

### 1.   **First Element — Foreseeability**

To satisfy the first element of the state-created danger theory, plaintiffs must adequately plead "that the harm ultimately caused was a foreseeable and fairly direct result of the state's actions." Morse, 132 F.3d at 908. This necessarily entails allegations of "an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." Phillips, 515 F.3d at 238. In the matter *sub judice*, defendants argue that the foreseeability standard requires some evidence that Snyder and Watts were aware that "Fernsler had sexually abused children in the past." (Doc. 14 at 6.) Defendants are mistaken.

Plaintiffs allege that Snyder and Watts knew Fernsler was viewing child pornography, knew that he was applying to become a foster parent, and knew that he had a history of domestic violence. Snyder and Watts nonetheless purportedly concealed Fernsler's criminal behavior, both from prospective employers and the Pennsylvania Department of Welfare, and eventually destroyed the evidence of Fernsler's crime. Plaintiffs' allegation that Snyder and Watts knew of Fernsler's aspirations to foster parenthood is dispositive in the court's foreseeability analysis. Cognizant of Fernsler's intentions, it was reasonably foreseeable that covering up Fernsler's crime would lead to future child abuse, especially given the ready access to children that naturally accompanies a position as a foster parent. Contra Morse,

11

132 F.3d at 908-09 (dismissing complaint when plaintiffs failed to allege that government defendants were aware of third party attacker's violent tendencies). Snyder and Watts at the very least possessed an awareness of the risk sufficiently concrete to put them on notice of Fernsler's proclivities and, thus, the ultimate harm was foreseeable.

In addition to the foreseeability component of the analysis, the court must assess whether the harm "is a 'fairly direct' result of the defendant's acts." Phillips, 515 F.3d at 239. This inquiry essentially asks whether the alleged misconduct and the harm caused were "too attenuated" to justifiably hold the defendant liable. See id. at 238. Phillips explains that "a distinction exists between harm that occurs to an identifiable or discrete individual under the circumstances and harm that occurs to a 'random' individual with no connection to the harm-causing party." 515 F.3d at 239 (citing Morse, 132 F.3d at 909). Snyder and Watts purportedly knew that Fernsler had committed an especially pernicious crime targeting an especially defenseless societal class. They allegedly knew that Fernsler was attempting to acquire state approval to become a foster parent, which would place him in direct contact with minors, many of whom are escapees of broken homes. In short, Snyder and Watts knew of Fernsler's dangerous proclivities to exploit children and nonetheless entered a confidentiality agreement whereby these proclivities were actively concealed. See Pascocciello v. Interboro Sch. Dist., Civ. A. No. 05-5039, 2006 WL 1284964, at *5 (E.D. Pa. May 8, 2006) (finding defendant's awareness of third-party sexual deviate's "dangerous proclivities" sufficient to satisfy

12

foreseeability inquiry); <u>see also</u> <u>Morse</u>, 132 F.3d at 909-10 (explaining that harm is

not overly attenuated when officials "knew of the [attackers'] dangerous

propensities").  The court concludes that the ultimate harm that befell D.N. and

S.N. was foreseeable as a matter of common sense.  Perhaps the evidence

unearthed in discovery will lead to a different conclusion, but plaintiffs have pled

enough facts to raise a reasonable expectation that discovery will support their

claims.

### 2.   <u>Second Element — Culpability</u>

Liability under the state-created danger theory asks whether the state official

acted in willful disregard for the plaintiff's safety, <u>Phillips</u>, 515 F.3d at 235, which

requires that "a state actor acted with a degree of culpability that shocks the

conscience." <u>Bright</u>, 443 F.3d at 281.  Identifying conduct that shocks the

conscience depends upon the circumstances present in each case, particularly the

decision-making conditions under which the government actor proceeds.  <u>Sanford</u>,

456 F.3d at 309-10.  When an official acts in a "'hyperpressurized environment,' an

intent to cause harm is usually required. . . . [I]n cases where deliberation is

possible and officials have the time to make 'unhurried judgments,' deliberate

indifference is sufficient." <u>Id.</u> at 309.  In the instant matter, Snyder and Watts were

afforded at least one full day to calibrate an official response to Fernsler's

revelation; thus, their decision making must rise to a level of deliberate indifference

in order to qualify as sufficiently conscience-shocking to support § 1983 liability.

The court will not dwell on the culpability element, for it is clear that plaintiffs' allegations amount to official behavior that shocks the conscience. Plaintiffs aver that on March 7, 2005, Snyder learned that Fernsler was using a department computer to view child pornography.  Snyder immediately began conferring with Watts regarding the proper Township response.  The following day, Snyder and Watts met with Fernsler and presented the termination agreement. Defendants thereafter concealed Fernsler's crime and pressured others to do the same, culminating in the destruction of the principal evidence in their possession—the computer's hard drive.  Plaintiffs have alleged that the Township's chief law enforcement officer and its city manager intentionally obfuscated the commission of a crime.  The risk (not to mention the impropriety) of concealing such illegality was so obvious that Snyder and Watts should have known the potential for future harm.  See Phillips, 515 F.3d at 240-41 (citing Sanford and explaining that deliberate indifference may exist "without actual knowledge of a risk of harm when the risk is so obvious that it should be known").  Clearly, the allegations levied against Snyder and Watts are sufficient to meet the "shock the conscience" standard.

### 3.   **Third Element — Relationship**

The third element of the state-created danger theory requires a plaintiff to allege that "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's action,

as opposed to a member of the public in general." <u>Bright</u>, 443 F.3d at 281 (internal citations and quotation marks omitted); <u>Morse</u>, 132 F.3d at 912 (holding that the court must ascertain whether the plaintiff "was a foreseeable victim of the defendant's acts in a tort sense" (quoting <u>Kneipp</u>, 95 F.3d at 1209 n.22)); <u>see also</u> <u>Phillips</u>, 515 F.3d at 242 ("The relationship that must be established between the state and the plaintiff can be 'merely' that the plaintiff was a foreseeable victim, individually or as a member of a distinct class."). Defendants contend that even if Fernsler was viewing child pornography on his department computer, such conduct "does not lead to the conclusion that Fernsler would sexually molest the biological siblings of foster children in his care some 15 months later." (Doc. 14 at 9.)

Defendants unduly restrict the class of persons foreseeably vulnerable to Snyder and Watts' alleged concealment of Fernsler's criminality. Defendants purportedly knew that Fernsler was an aspiring foster parent, and knew that Fernsler was viewing child pornography on a department computer. According to the complaint, Snyder and Watts not only failed to initiate prosecution, they also entered an agreement to suppress any information about Fernsler's criminal conduct and destroyed evidence of the crime's commission. These acts of concealment placed a discrete class of individuals—Pennsylvania foster children—in danger; D.N. and S.N. fall squarely within this discrete class. Under the circumstances, it was reasonably foreseeable that Fernsler would exploit his status as a foster parent to abuse a foster child. <u>See</u> <u>Rivas v. City of Passaic</u>, 365 F.3d 181, 197 (3d Cir. 2004) (explaining that the relationship inquiry must not be "so

restrictive as to limit the scope of § 1983 liability to those instances where a specific

individual is placed in danger" (quoting <u>Morse</u>, 132 F.3d at 913)).  The court finds

that plaintiffs have sufficiently pled the existence of a relationship between the

government defendants and D.N. and S.N. in satisfaction of the third element of the

state-created danger theory.

### 4. <u>Fourth Element — Affirmative Act</u>

The final element of the state-created danger theory requires allegations that

state actors "use[d] their authority to create an opportunity that otherwise would

not have existed for the third-party's crime to occur."  <u>Phillips</u>, 515 F.3d at 235.  A

defendant's liability is therefore "predicated upon the states' *affirmative acts* which

work to the plaintiffs' detriment[] in terms of exposure to danger."  <u>Bright</u>, 443 F.3d

at 282 (emphasis in original) (quoting <u>D.R. by L.R.</u>, 972 F.2d at 1374).  Requiring a

plaintiff to prove the existence of an affirmative act ensures that only the "misuse of

state authority, rather than the failure to use it" establishes the basis for

substantive due process liability.  <u>Id.</u>  The Third Circuit has explained, however,

that the determinative inquiry is not whether conduct is properly characterized as

an affirmative act or omission, but whether state action has placed the plaintiff in a

foreseeably dangerous position.  <u>See id.</u> at 283 n.7 (citing and explaining <u>Morse</u>, 132

F.3d at 915); <u>see also</u> <u>Gremo v. Karlin</u>, 363 F. Supp. 2d 771, 789 (E.D. Pa. 2005)

(explaining that the operative question is whether the defendants "used their

authority . . . to create a dangerous situation or to make [plaintiff] more vulnerable

to danger had [the defendants] not intervened" (alterations in original) (quoting

Kneipp, 95 F.3d at 1209)).

Plaintiffs allege that Snyder and Watts took several affirmative steps that

significantly increased D.N. and S.N.'s exposure to Fernsler's heinous conduct.  The

officials actively suppressed Fernsler's admission of possessing child pornography

and destroyed the physical evidence of this criminal conduct.  They also

encouraged other employees to refrain from any disclosures about Fernsler's

criminal conduct.  In addition, defendants entered into a termination agreement

with Fernsler, contractually obligating the Township to silence in the wake of a

flagrant criminal act on Township property.  Defendants contend that these

allegations comprise a failure to intervene rather than the affirmative creation of

harm.  (See Doc. 14 at 10.)  The court disagrees.  At the pleading stage, the

complaint must only assert enough facts to raise a reasonable expectation that

discovery will reveal evidence of the necessary element.  See Twombly, 550 U.S. at

556.  Plaintiffs' complaint avers affirmative government misconduct, which placed

D.N. and S.N. in foreseeable danger.  The specific scope of defendants'

conduct—and alleged concealment of Fernsler's crime—is more properly explored

in discovery.  The court finds that plaintiffs' allegations of a state-created danger

are sufficient at this stage to withstand defendants' Rule 12(b)(6) challenge.

C.    **Qualified Immunity**

Qualified immunity protects a state actor who has committed constitutional

violations if the plaintiff's rights were not "clearly established" when the individual

17

acted.  Pearson v. Callahan, --- U.S. ---, 129 S. Ct. 808, 815 (2009).  A right is clearly

established when the state of the law at the time of the incident provides an official

"fair warning that their alleged treatment of [the plaintiff] was unconstitutional."

Hope v. Pelzer, 536 U.S. 730, 741 (2002).  The state actor is amenable to suit only if a

reasonable person would have known that the state actor's conduct infringed the

plaintiff's constitutional rights.  See id.; see also Curley v. Klem, 499 F.3d 199, 206-07

(3d Cir. 2007).  No liability will attach if a reasonable state actor could have believed

that the challenged conduct was lawful.  Springer v. Henry, 435 F.3d 268, 280 (3d

Cir. 2006) ("[T]he court should ask whether the [official] acted reasonably under

settled law in the circumstances." (quoting Hunter v. Bryant, 502 U.S. 224, 228

(1991) (second alteration in original))).

The court finds that Snyder and Watts are not entitled to qualified immunity.

Viewing the facts in the light most favorable to plaintiffs, the complaint sufficiently

pleads a substantive due process violation under the state-created danger theory.

See Saucier v. Katz, 533 U.S. 194, 201 (2001) (requiring courts to determine whether

the facts alleged by the complaint, viewed in the light most favorable to the non-

movant, describe the violation of a constitutional right), abrogated in part by

Pearson, --- U.S. ---, 129 S. Ct. 808; see also supra Part III.B.  Thus, plaintiffs have

adequately alleged the existence of a constitutional violation and plaintiffs' rights

were clearly established at the time of the incident.  See Sanford, 456 F.3d at 304

(stating that the "state-created danger theory is now widely recognized" and tracing

the doctrine's development in the Third Circuit).  Assuming arguendo that this

precise factual scenario has never before been the subject of litigation, government actors are nevertheless on notice that certain egregious conduct is quite obviously unconstitutional.  See Hope, 536 U.S. at 741 (stating that "officials can still be on notice that their conduct violates established law even in novel factual circumstances").  In this case, the complaint alleges behavior on the part of Snyder and Watts that, if true, is plainly criminal.  Indeed, it stretches credulity for defendants to contend that conspiratorial concealment of criminal activity is insulated by qualified immunity and such contention is flatly rejected.

### D.   Municipal Liability

Municipalities and other local government entities may not be held liable under § 1983 for the acts of their employees under a theory of *respondeat superior* or vicarious liability.  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); see also Monell, 436 U.S. at 691 (stating that "a constitutional violation does not arise *solely* because [a municipality] employs a tortfeasor" (emphasis in original)); Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  Municipal liability may lie, however, if the plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Brown, 520 U.S. at 403 (citing Monell, 436 U.S. at 694).  A policy is an official proclamation or municipality edict, while a custom is a practice that is "so permanent and well settled as to virtually constitute law."  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citations omitted) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990).  A custom need not be "formally approved by an appropriate decisionmaker," but must be "so widespread

as to have the force of law." <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575,

584 (3d Cir. 2003) (quoting <u>Brown</u>, 520 U.S. at 404).

Plaintiffs contend that Snyder, the chief of the Township's police

department, and Watts, the Township manager, are municipal policymakers by

virtue of the decision-making positions held by each.  Defendants do not dispute

that Snyder and Watts possess policymaking authority, but instead argue that the

complaint fails to identify a Township policy that led to plaintiffs' injuries.

Importantly, however, "municipal liability may be imposed for a single decision by

municipal policymakers under appropriate circumstances," <u>Pembaur v. City of</u>

<u>Cincinnati</u>, 475 U.S. 469, 480 (1986), and <u>Monell</u> liability may "attach when the

[government official] has policy making authority rendering his or her behavior an

act of official government policy," <u>McGreevy v. Stroup</u>, 413 F.3d 359, 367 (3d Cir.

2005).  Defendants do not object to the characterization of Snyder and Watts as

Township policymakers.  In the context of the instant motion, plaintiffs have thus

alleged that Township officials with policymaking authority took specific action

attributable to the Township within the ambit of <u>Monell</u> liability.  Moreover, the

complaint adequately sets forth the causal connection between this official action

and the tragic abuse of D.N. and S.N.  The Township may be subject to liability

under these circumstances.  Its request for dismissal will be denied.

**IV.**   **Conclusion**

For the foregoing reasons, plaintiffs have adequately stated a substantive due process violation under the state-created danger doctrine and defendants' motion to dismiss (Doc. 13) the complaint will be denied.

An appropriate order will issue.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:      March 31, 2009

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| D.N. and S.N., minors by and through | : | **CIVIL ACTION NO. 1:08-CV-0526** |
| their Guardians Ad Litem Arthur | : | |
| Nelson IV and Marie Nelson, ARTHUR | : | **(Judge Conner)** |
| NELSON IV, and MARIE NELSON, | : | |
| | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | |
| | : | |
| KEVIN SNYDER, GORDON WATTS, | : | |
| and NORTH LONDONDERRY | : | |
| TOWNSHIP, | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 31st day of March, 2009, upon consideration of defendants'

motion (Doc. 13) to dismiss plaintiffs' complaint, and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.  The motion (Doc. 13) to dismiss is GRANTED in part and DENIED in part as follows:

    a.  The motion is GRANTED with respect to the substantive due process claims raised under the "special relationship" theory. Leave to amend is denied as futile.  <u>Grayson</u> , 293 F.3d at 108.

    b.  The motion is DENIED in all other respects.

 S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge